116 So.2d 622 (1959)
B.J. HARRIS and Paula Harris, His Wife, Appellants,
v.
SUNSET ISLANDS PROPERTY OWNERS, INC., Appellee.
Supreme Court of Florida.
April 8, 1959.
On Rehearing December 2, 1959.
Sibley, Grusmark, Barkdull & King, David P. Catsman, Marion E. Sibley and James Lawrence King, Miami Beach, for appellants.
Paul & Sams, D.P.S. Paul and Francis W. Sams, Miami, for appellee.
THORNAL, Justice.
Appellants Harris, who were defendants below, seek reversal of a decree of the Chancellor affirming the validity of certain *623 covenants restricting the sale and occupancy of land.
We are called upon to determine whether the covenants in question can be enforced in view of the provisions of the Fourteenth Amendment to the Constitution of the United States prohibiting state action which denies equal protection of the laws.
Mr. and Mrs. Harris purchased a lot in a subdivision known as Sunset Islands in Dade County. At the time of the purchase there was of record certain restrictive covenants affecting the sale and occupancy of the property. Among these were the following:
"2. Ownership. No lot (nor any part thereof) shall be sold, conveyed or leased to anyone not a member in good standing of Sunset Islands Property Owners, Inc., a Florida corporation, Provided, however, that nothing in this covenant contained shall prevent any corporation, a majority of the stock in which is owned by members in good standing of Sunset Islands Property Owners, Inc., from owning or leasing any such property.
"3. Occupancy. No lot (nor any part thereof) shall be used or occupied by anyone not a member in good standing of Sunset Islands Property Owners, Inc. The provisions of this covenant shall not apply to bona fide domestic servants domiciled on the premises where they are employed."
Similar restrictions covered all of the property in the subdivision and it was provided that they should remain in full force until 1972. When appellant Harris purchased the land the by-laws of appellee Sunset Islands Property Owners, Inc., contained a provision which in sum provided that no member of the corporation would, prior to the year 1966, sell or lease any property in the subdivision to any person "not of the Caucasian race, or who is not a Gentile, or who has been convicted of a felony, * *." The by-laws further provided that "the only ground upon which an owner or lessee of property on said Islands may be denied membership in this corporation shall be that the applicant is not a Gentile or is not of the Caucasian race or has been convicted of a felony."
It will be seen that when Harris, a Jew, purchased the property the recorded restriction required that he be a member of the appellee nonprofit corporation. The membership application blank which contained an excerpt from the by-laws on the reverse side specifically excluded him from membership in the corporation because of his religion. With this information he nevertheless, proceeded to construct an expensive residence on the land, and with his family assumed occupancy. At this point, the appellee Sunset Islands Property Owners, Inc., filed suit to compel Harris to vacate the property alleging that he was not a member of the corporation. It should be pointed out that prior to the filing of the complaint the by-laws of the corporation were amended by eliminating the references to Caucasians, Gentiles and felons. In lieu thereof there was substituted a provision to the effect that "the qualifications for membership in this association shall be that the member be of good moral character, that he be an owner or lessee, or one who proposes to become an owner or lessee, of property on Sunset Islands No. 1 or No. 2." Pending the litigation, and after the aforesaid amendment, appellants, deeming themselves to be of good moral character, applied for membership and were rejected. When the matter came on for final hearing, the Chancellor by his decree indicated the view that the only restriction which he was being requested to enforce was that which merely required membership in the corporation. He had the view that this was not an unreasonable requirement and that having failed to become a member of the corporation, the appellants were subject to the restrictions. By his decree he ordered the appellants to sell their property to the appellee corporation and provided that if *624 they could not agree on the price, then the appellants should sell and the appellee should pay an amount fixed by three appraisers named by the court. Of course, the appellants were ordered to vacate the property. Reversal of this decree is now sought.
Appellants contend that the restriction requiring membership in the corporation supplemented by the by-law requiring that in order to be a member a person would have to be a Caucasian Gentile, constituted an unlawful restraint on the alienation of the property and that the enforcement thereof denied to them the equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States.
Appellee contends that the Chancellor ruled correctly in finding that he was merely called upon to sustain the restriction which required membership in the corporation as a condition to ownership and occupancy of the property. Appellee says that under the by-laws, as amended, stipulating as the sole condition to membership good moral character of the applicant, the appellants had applied for membership and in good faith had been rejected.
It appears to us to be perfectly clear that when appellants Harris bought the land in question, the restriction, if valid, would preclude them from purchasing the property or from ever occupying it. We are aware of the fact that the recorded restriction itself merely required membership in the corporation. However, it is impossible to disregard the specific requirements of the by-laws that in order to become a member of the corporation one must be a Caucasian Gentile and innocent of any prior conviction of a felony. Conversely stated Mr. Harris, being a Jew, could not possibly become a member of the corporation under then existing by-laws. The record, incidentally, clearly sustains the fact that the provision excluding felons has no materiality here and we do not discuss it further.
We are thus confronted with a twenty-five-year restrictive covenant, the effect of which is to prohibit the purchase or occupancy of described land by a Jew. Until May 3, 1948, restrictions of this nature were generally considered by the state courts to be subject to enforcement by judicial decree. On the significant date last mentioned the Supreme Court of the United States announced its decision in Shelley v. Kraemer (McGhee v. Sipes), 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R. 2d 441. This decision has been generally accepted throughout the country for more than ten years. It has been cited more than ninety times by various courts throughout the land. It has also been the subject of many law review articles. Cf. Racial Restrictions and the Fourteenth Amendment, William R. Ming, Jr., Vol. 16, Chicago Law Review, No. 2, p. 203; also 39 Cal.L.Rev. 493. In Shelley v. Kraemer, supra, the Supreme Court specifically held that the right to own, use, occupy and dispose of property is a privilege guaranteed to a citizen within the contemplation of the provisions of the Fourteenth Amendment to the Constitution of the United States. It was further held that although covenants of the nature here under discussion are not inherently void in the sense that they cannot be respected by parties as between themselves, they are nevertheless restraints on the constitutionally guaranteed right to acquire and occupy property. When, therefore, a state court on the petition on one who seeks to enforce such covenants undertakes to inject judicial validity into the restriction and thereby through the medium of a judicial decree enforces the restriction in violation of the rights of the property owners, such action by the state court constitutes state action violative of the equal protection provisions of the Fourteenth Amendment. Shelley v. Kraemer, supra, recognized that a state can act only through its executive, legislative or judicial branches. Insofar as the proscriptions of the Fourteenth Amendment are concerned, effective action by the states *625 through any one of the three branches which results in a denial of equal protection of the laws is prohibited.
We could elaborate extensively on the rule of Shelley v. Kraemer, supra, in the light of many subsequent decisions in the state and federal courts as well as almost innumerable articles in the law reviews as mentioned above. Our investigation fails to reveal any breach in the armor which that decision constructs as a protection to the property right here under discussion. The rule of Shelley v. Kraemer, supra, has become so thoroughly grounded in the decisions of the state courts around the country as well as in the courts of the federal system that only a total blindness to the compelling and controlling aspects of the decision would enable us to avoid it. In consequence of what we are compelled to recognize as a controlling rule of law it is clear that when the appellants acquired the property in question, the restrictive covenants asserted by the appellee in the current litigation constituted restraints on the alienation and use of property in disregard of the organic right of the appellants to acquire and occupy it. When appellee successfully undertook to obtain the decree of the state court to enforce this restraint, it accomplished an act which in effect denied to the appellants the equal protection of the laws and in so doing inspired state action proscribed by the Fourteenth Amendment.
We do not overlook the contention of the appellee that it amended its by-laws before the institution of the litigation by eliminating the objectionable provisions which specifically precluded Jews from membership. When the subsequent application of the appellants was considered by the directors it was rejected. Again, the law requires us to point out that when the appellants acquired the property the then-applicable restrictions were totally invalid. Inasmuch as the appellants could not and did not then become members of the corporation, obviously they could not and were not bound by amendments to the by-laws accomplished without their consent more than a year after they acquired their property rights.
We caution that we are not here holding that the requirement of membership in the corporation and limiting membership to people of good moral character, as stipulated in the amended by-laws, is in and of itself a prohibited restraint on alienation. Required membership untainted by religious exclusions might in another setting be perfectly legitimate. The corporation by its charter appears to have laudable and useful functions that could be of service to its members. We are not here called upon to determine whether the requirement of membership in the corporation as governed by the amended by-laws constitutes a valid and enforceable covenant. All that we here determine is that the original requirement of membership in the specific exclusion of Jews constituted an illegal and unenforceable restraint on these appellants at the time that they acquired the property. As to them the requirement could not be enforced. This opinion is not to be given any broader interpretation.
The decree of the Chancellor is
Reversed.
TERRELL, C.J., and HOBSON, DREW and O'CONNELL, JJ., concur.

On Rehearing
PER CURIAM.
A rehearing having been granted in this cause and the cause having been further considered upon the record and briefs and argument of attorneys for the respective parties; it is thereupon ordered and adjudged by the court that the opinion and judgment filed in this cause April 8, 1959, be and it is hereby adhered to on rehearing.
THOMAS, C.J., TERRELL, HOBSON, DREW, THORNAL and O'CONNELL, JJ., and SMITH, Circuit Judge, concur.